IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES WILDER,
    Plaintiff,

vs.                                             Case No. 3:10cv528/MCR/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
    Defendant.
_____/

**REPORT AND RECOMMENDATION**

       This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83. Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.     PROCEDURAL HISTORY

       On August 10, 2006, Plaintiff protectively filed an application for SSI, in which he alleged disability beginning March 3, 2005 (Tr. 10).[1] The application was denied initially and on reconsideration (*id.*). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and a hearing was held on October 16, 2008 (Tr. 10, 17). On December 11, 2008, the ALJ issued a decision in which he found Plaintiff "not disabled" since August 10, 2006, the date Plaintiff

---

[1] All references to "Tr." refer to the transcript of Social Security Administration record filed on February 9, 2011 (Doc. 5). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

applied for SSI (Tr. 10–16).[2]  After considering additional evidence submitted by Plaintiff, the Appeals Council ("AC") denied Plaintiff's request for review on October 16, 2010 (Tr. 1–5).  This appeal followed.

II.     FINDINGS OF THE ALJ

In concluding that Plaintiff has not been under a disability since August 10, 2006, the ALJ made several findings relative to the issues raised in this appeal:

1)      Plaintiff has not engaged in substantial gainful activity since August 10, 2006.

2)      Plaintiff has two severe impairments: degenerative disc disease ("DDD") and arthritis in the left knee.

3)      Plaintiff has no impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4)      Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b),[3] except he is limited to performing simple one or two-step job instructions due to concentration deficits secondary to back pain.

5)      Plaintiff is unable to perform his past relevant work, but—considering his age, education, work experience, and RFC—there are jobs existing in significant numbers in the national economy he can perform; therefore, he is not disabled.

III.    STANDARD OF REVIEW

---

[2] Thus, the time frame most relevant to Plaintiff's claim for SSI is August 10, 2006 (application date) through December 11, 2008 (ALJ's decision date), although Plaintiff alleges disability commencing in March 2005.

[3] Light work is defined in the regulations as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. 416.967(b).

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[4] the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5. Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV. PLAINTIFF'S PERSONAL, EMPLOYMENT, AND MEDICAL HISTORY[5]

Plaintiff was born on September 25, 1960, and thus was forty-five years old on the date he applied for SSI. He has a limited education and is able to communicate in English. Plaintiff's past

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks disability insurance benefits ("DIB") or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, citations in this Report should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

[5] Unless otherwise noted, the information in this section is derived from the opinion of ALJ (Tr. 10–16).

relevant work is as a brick mason, which he performed at the heavy exertional level and last performed in 2006. Plaintiff stopped working when he started to experience back pain, which has continued and which he describes as extending down his back into his right leg. He rates his back pain on a typical day as a seven to eight on a ten-point scale and notes that he also has knee pain. Plaintiff must sit in a recliner five times per day, but he is able to perform household chores and go to the store.

On July 20, 2004, Plaintiff presented to Jeff L. Buchalter, M.D., with complaints of low back pain with right lower extremity pain (Tr. 260). Dr. Buchalter reviewed a magnetic resonance imaging scan ("MRI") of the lumbar spine obtained on September 4, 2003 (Tr. 262). Dr. Buchalter's impression was annular bulge at L-4-L5 with slight encroachment upon a nerve root, mild annular bulge at L2-L3 with minimal encroachment upon a nerve root, and mild DDD at L2-L3 (*id.*). Dr. Buchalter administered an epidural steroid injection and repeated the same or similar injections in August and September 2004 (Tr. 262, 258, 256). Plaintiff reported no improvement with the injections (*see, e.g.*, Tr. 255). Dr. Buchalter therefore recommended a discography, which was performed on December 7, 2004 (*see, e.g.*, Tr. 255, 250). The discography revealed an annular tear of the L5-S1 disc (*see* Tr. 244, 289). On December 21, 2004, Dr. Buchalter recommended that Plaintiff undergo a nucleoplasty or nucleoplasty-based procedure, which would hopefully avoid the need for a lumbar fusion (*see* Tr. 244).[6]

On October 26, 2006, Plaintiff underwent a consultative examination by Marta Jecenyik, M.D. (Tr. 289). Plaintiff displayed full ranges of motion in the cervical spine, lumbar spine, ankles, and great toes, with no deficits in the upper extremities (Tr. 290, 291–93). Examination of the lower extremities revealed a full range of motion in all major joints, except with right hip abduction and right knee flexion,[7] as well as normal circulation, temperature, and sensation to light touch (Tr. 290). Plaintiff displayed some limited weakness and atrophy in the right quadriceps, as well as crepitus

---

[6] The record contains no indication that Plaintiff underwent the recommended nucleoplasty.

[7] Although Dr .Jecenyik stated in the narrative section of her report that Plaintiff has less than full range of motion with right hip abduction (Tr. 290), she recorded no such limitation on a "Range of Motion Report" form (*see* Tr. 293). Dr. Jecenyik noted decreased range of motion with right knee flexion both narratively and on the form (*see* Tr. 290, 293).

in the right knee (*id.*). In assessing Plaintiff's abilities, Dr. Jecenyik opined that Plaintiff is limited in his ability to stand, walk, lift, bend, and stoop, but she did not state the extent to which he is limited (*see id.*).

A lumbar spine MRI was obtained on February 20, 2008, and resulted in the following impression offered by the reviewing radiologist: "Minor degenerative changes in the lumbar spine, particularly at L2-L3, L4-L5, and L5-S1, where there are small broad-based disc bulges. However, no significant focal area of spinal or foraminal stenosis is seen." (Tr. 329, 346). In short, the overall assessment was minor degenerative changes in the lumbar spine. Similarly, x-rays of the lumbar spine were obtained on July 22, 2008, and revealed mild to moderate DDD and no acute findings (Tr. 390).

On August 13, 2008, Plaintiff underwent a consultative orthopedic examination by Richard W. Lucey, M.D., who reviewed the aforementioned x-ray results, as well as the discography results. Based on his review, Dr. Lucey assessed DDD of the lumbar spine; he also noted that Plaintiff was "post discography showing annual tear at L5-S1" (Tr. 384). Following Plaintiff's examination, Dr. Lucey completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" (Tr. 384–89). On this form Dr. Lucey opined that Plaintiff can occasionally lift or carry up to twenty pounds; stand or walk one hour without interruption and four hours, total, in an eight-hour day; and sit four hours without interruption and eight hours, total, in an eight-hour day (Tr. 384–85). He also opined that Plaintiff can continuously handle, finger, and feel; frequently reach overhead, reach in all directions, and balance; and occasionally push, pull, operate foot controls, climb stairs or ramps, stoop, kneel, and crouch (Tr. 386–88). Continuing, Dr. Lucey opined that Plaintiff should never crawl, climb ladders, or climb scaffolds (Tr. 387). Finally, Dr. Lucey opined that Plaintiff can perform numerous and varied daily activities, such as traveling, shopping, ambulating without assistance, cooking, sorting papers, and using public transportation (*see* Tr. 389).

V.   DISCUSSION

As previously noted, when Plaintiff first presented to Dr. Buchalter he reviewed with Plaintiff—and included in his report—the results of a lumbar MRI from September 2003. The actual MRI report, however, was not a part of Plaintiff's file at the time of his hearing or prior to the issuance of the ALJ's decision. Following the ALJ's decision, Plaintiff submitted the MRI report

and related records to the AC, but the AC denied Plaintiff's request for review. In this appeal Plaintiff generally contends that the evidence submitted to the AC renders the ALJ's decision to deny benefits unsupported by substantial evidence; he also appears to contend that the AC erred by denying review and/or by failing to explain its reason for denying review (*see* Doc. 7 at 3–7). Plaintiff, however, specifically frames the issue raised in this appeal as follows: whether his claim should be remanded to the Commissioner for further proceedings, pursuant to sentence six of 42 U.S.C. § 405(g), since new, material evidence was submitted to the AC, and good cause exists for failing to previously submit the evidence (*see* Doc. 7 at 8–14).[8]

In its notice denying review, the AC specifically stated it had considered the new evidence presented by Plaintiff, as well as the reasons Plaintiff disagreed with the ALJ's decision, as presented in a letter from Plaintiff's counsel dated February 13, 2009 (*see* Tr. 1–5, 182–84, 391–406). The AC concluded, however, that the new information provided no "basis for changing the [ALJ's] decision" (Tr. 2). The AC thus did not err by failing to consider the new evidence. *See* Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994). Moreover, to the extent Plaintiff contends the AC was required to explain its denial of review, his contention fails. *See* Burgin v. Comm'r of Social Sec., 420 Fed. Appx. 901, 903 (11th Cir. 2011) ("The AC considered and incorporated the additional evidence submitted by Burgin into the record. Contrary to Burgin's argument, the AC was not required to explain its denial of review.") (citing Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007)).

Plaintiff's next assertion, that this case should be remanded pursuant to sentence six, also fails. Section 405(g) permits a district court to remand an application for benefits to the Commissioner by two methods, which are commonly denominated "sentence four remands" and "sentence six remands," each of which remedies a separate problem. Ingram, 496 F.3d at 1261. The fourth sentence of section 405(g) empowers a federal court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The sixth sentence empowers a federal court to remand an application for benefits to the

---

[8] Despite Plaintiff's narrow framing of the issue, the undersigned will address all issues he appears to raise.

Case No. 3:10cv528/MCR/EMT

Commissioner for the taking of additional evidence, upon a showing "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.* "[A] sentence six remand is available when evidence not presented to the Commissioner <u>at any stage of the administrative process</u> requires further review." <u>Ingram</u>, 496 F.3d at 1267 (emphasis added). Stated another way, "Sentence six allows the district court to remand to the Commissioner to consider previously unavailable evidence; it does not grant a district court the power to remand for reconsideration of evidence previously considered by the Appeals Council." *Id.* at 1269. Therefore, because in this case the evidence presented by Plaintiff to the AC has been considered by the Commissioner and is part of the administrative record, that evidence can be the basis for only a sentence <u>four</u> remand, not a sentence <u>six</u> remand. *Id.* The undersigned will thus consider whether a remand under sentence four is appropriate. Such a remand is warranted if the "new evidence renders the denial of benefits erroneous." <u>Ingram</u>, 496 F.3d at 1262.

Here, the new evidence submitted to the AC by Plaintiff consists of records from Aaron B. Stein, M.D., a physician with Comprehensive Pain Medicine & Rehabilitation, dated September 2 and 4, 2003 (Tr. 403–05). The records reflect that at Plaintiff's initial presentation he complained of low back pain radiating into the right lower extremity (Tr. 398). Dr. Stein ordered a lumbar MRI, which was performed on September 4, 2003 (Tr. 392, 397, 400). The MRI report reveals the existence of an annular bulge at L4-L5 with slight encroachment upon a nerve root, a mild annular bulge at L2-L3 with minimal encroachment upon a nerve root, and mild DDD at L2-L3 (Tr. 393).

The afore-described evidence does not render the denial of SSI benefits erroneous. First, the evidence concerns Plaintiff's condition in early September 2003 and thus is only marginally relevant to Plaintiff's claim for SSI, filed August 10, 2006. *See* <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005) (indicating that SSI claimant becomes eligible to receive benefits in the first month in which he is both disabled and has an SSI application on file). Moreover, the ALJ considered Dr. Buchalter's records and specifically noted that the records document an annular bulge (Tr. 13). And as previously noted, Dr. Buchalter's opinion that mild to moderate annular bulging existed <u>was based on the September 2003 MRI</u> (*see* Tr. 262). Furthermore, the results of the 2003 MRI are generally consistent with the other test results that were included in the record at the time of

Plaintiff's hearing, including the December 2004 discograpy results, the February 2008 lumbar MRI results, and the July 2008 lumbar x-ray results. Indeed, as the ALJ noted, the February 2008 MRI revealed minor degenerative changes (*see* Tr. 13), such as DDD and/or disc bulging at certain levels, which is generally consistent with the results of the earlier MRI. However, to the extent any of the more recent test results are inconsistent with the 2003 MRI, the more recent test results—especially those reflecting testing between August 2006 and December 2008—are obviously far more probative of Plaintiff's condition during the time frame relevant to this appeal.

Second, the record establishes that Plaintiff worked as a brick mason, <u>at a heavy exertional level</u>, through March 7, 2006 (*see* Tr. 24, 118), which encompasses, approximately, a two-and-a-half year period following the MRI. Thus, the 2003 MRI results do little, if anything at all, to undermine the ALJ's finding that Plaintiff was capable of performing light work on and after August 2006. Likewise, the 2003 MRI results do not undermine the ALJ's finding that Plaintiff's activities of daily living are inconsistent with a disabling condition or pain (Tr. 13). For example, Plaintiff testified in October 2008 that he performs certain daily activities, such as light cooking, washing clothes, doing the dishes, making his making his bed, light gardening, riding in a car, shopping, and visiting friends (Tr. 36–37, 38). Similarly, Plaintiff reported in January 2007 that he had made no changes to his daily activities, and that he could tend to his personal hygiene, prepare simple meals, perform light housekeeping, do laundry, shop, drive, walk for thirty to forty minutes, and routinely walk through his neighborhood (Tr. 158–59).

Third, the 2003 MRI report casts no doubt on the opinions of Dr. Jecenyik, who—despite generally opining that Plaintiff would have some, unspecified limitations in certain physical abilities—found that Plaintiff had full range of motion in all areas tested except the right knee (and possibly the right hip), as the ALJ noted (*see* Tr. 13; *see also* n.7, *supra*). The same holds true with regard to Dr. Lucey's opinions, which are consistent with a finding that Plaintiff is capable of performing light work, and which the ALJ referenced in support of his findings (Tr. 13). It should also be noted that a non-examining agency physician opined in January 2007, essentially, that Plaintiff is capable of performing light work (*see* Tr. 303–10), and in reaching these opinions the physician specifically noted that he considered the results of the September 2003 lumbar MRI (Tr. 304).

For all of these reasons, the undersigned concludes there is no "'reasonable possibility that [the new evidence] would change the administrative result.'"  Robinson v. Astrue, 365 Fed. Appx. 993, 996 (11th Cir. 2010) (quoting Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987)); *see also* Keene v. Astrue, No. 5:09cv192/SPM/WCS, 2010 WL 2404421, at *14–16 (May 20, 2010) (new evidence submitted by a claimant's treating physician to the AC did not render the ALJ's prior denial of benefits erroneous) (*report and recommendation adopted*, Keene v. Astrue, 2010 WL 2404397 (N.D. Fla. June 16, 2010)).  Accordingly, the Appeals Council did not err in denying review or in failing to remand Plaintiff's case to the ALJ to consider the new evidence.

It is therefore respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED,** that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 5<u>th</u> day of December 2011.

>  /s/ *Elizabeth M. Timothy*
>  **ELIZABETH M. TIMOTHY**
>  **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**